# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 1:19CR443 |
| | ) | |
| PLAINTIFF, | ) | JUDGE SARA LIOI |
| vs. | ) | |
| | ) | MEMORANDUM OPINION & ORDER |
| CEDRIC SHEPHARD, | ) | |
| DEFENDANT. | ) | |

Defendant Cedric Shephard ("Shephard") seeks suppression of all evidence seized from a black Jeep Cherokee by law enforcement on June 27, 2019 pursuant to a search warrant. (Doc. No. 17 ["Mot."].) Plaintiff United States of America (the "government") opposes the motion. (Doc. No. 18 ["Opp'n"].) Shephard did not request a hearing on the suppression motion. Because the motion tests the sufficiency of the search warrant and the supporting affidavit, the Court finds that the motion can be resolved on the briefing.[1] *See United States v. Chaney*, 921 F.3d 572, 581 (6th Cir. 2019) ("The constitutionality of a warrant is determined by what is contained in the four corners of the warrant, although the government can incorporate by express reference affidavits and other material.") (citing *Groh v. Ramirez*, 540 U.S. 551, 557–58, 124 S. Ct. 1284, 157 L. Ed. 2d 1068 (2004)).

---

[1] The government agreed that a hearing is unnecessary, and, with the exception of one fact irrelevant to the Court's analysis herein, agreed with Shephard's representation of the facts surrounding the search. (Opp'n at 82, n.1 (all page numbers refer to the page identification number generated by the Court's electronic docketing system).)

I. **BACKGROUND**

On June 26, 2019, Daniel Lajack, a Task Force Officer (TFO) with the Drug Enforcement Administration (DEA), sought a warrant to search Wilson's Auto Spa (the "Auto Spa"), a body shop business located in Wickliffe, Ohio, and a private residence located in Euclid, Ohio. (Doc. No. 18-2 (Affidavit in Support of Search Warrant ["Aff."]) ¶¶ 1–2, 5–6.) The supporting affidavit contained information from a confidential informant (CI), the results of two controlled purchases of narcotics conducted with the cooperation of the CI, and field surveillance. The affidavit provided that the CI originally advised law enforcement that he/she could buy quantities of crack cocaine from Wilson, and further disclosed that the CI agreed to work with law enforcement to obtain a positive recommendation toward state charges pending against the CI in Cuyahoga County, Ohio. (*Id*. ¶¶ 13, 15.) In seeking the search warrant, TFO Lajack also drew from his considerable experience investigating drug trafficking organizations. (*Id*. ¶ 3.)

According to the affidavit, in June 2019, law enforcement began investigating the drug trafficking activities of Deontae Wilson, which led to the identification of Shephard as Wilson's crack-cocaine supplier. (*Id*. ¶ 12.) The two controlled drug buys were highlighted in the affidavit. The first controlled purchase using the CI took place on June 11, 2019. (*Id*. ¶ 18.) Prior to the purchase, the CI made a recorded call to Wilson requesting to purchase an ounce of crack cocaine. (*Id*. ¶ 19.) During the call, Wilson indicated that he was at the Auto Spa, which was known to be Wilson's place of business. Based upon this representation, task force agents began their surveillance of Wilson at the Auto Spa. (*Id*.) When Wilson left the Auto Spa, they followed

him, first to his residence and then to a gas station. (*Id.* ¶ 25.) While at the gas station, they observed Wilson get out of his car and enter the passenger side of a black Jeep Cherokee being driven by an individual who would later be identified as Shephard. Wilson returned to his car, and he and Shephard each drove their respective vehicles to the Auto Spa where Wilson sold the CI approximately 28.13 grams of crack cocaine. (*Id.*) After the CI left the premises, Shephard exited the Jeep Cherokee and was seen entering the Auto Spa. (*Id.* ¶ 27.)

The second controlled buy took place on June 20, 2019. (*Id.* ¶ 31.) Once again, the transaction occurred at the Auto Spa, but this time, Wilson advised the CI that he only had one of the two ounces of crack cocaine requested, and that he was waiting to receive the second ounce from his supplier. (*Id.* ¶¶ 34, 38.) Shortly thereafter, Shephard arrived at the Auto Spa in the black Jeep Cherokee and supplied Wilson with the second ounce of crack cocaine. (*Id.* ¶ 39.) After the transaction was complete and the CI left the premises, Wilson and Shephard left the Auto Spa in the Jeep Cherokee, drove to a bank, and then went to Wilson's residence. (*Id.* ¶ 41.)

On June 26, 2019, United States Magistrate Judge David A. Ruiz authorized a search warrant for Wilson's residence and the Auto Spa. (Doc. No. 18-1 (Search Warrant).) With respect to the Auto Spa, the warrant provided that "[t]he property to be searched is located at 30314 Euclid Avenue, Wickliffe, Ohio 44092[,]" and then described the property with more particularity. (Search Warrant, Attachment A, at 92.) It further provided that "[t]he property to be searched includes any out buildings, garages, containers, safes, and vehicles found therein." (*Id.*)

The search warrant was executed the following day (June 27, 2019). During the search, Wilson and Shephard were arrested outside the Auto Spa. When agents searched Shephard's black Jeep Cherokee, located in the bay of the Auto Spa, they discovered approximately 121

3

grams of crack cocaine in the center console of the vehicle.

## II. DISCUSSION

Shephard now seeks suppression of the evidence recovered from the Jeep Cherokee. He suggests that suppression is necessary because the affidavit failed to establish probable cause that "the customer vehicles at the Auto Spa were involved in any drug transactions." (Mot. at 74–75.) He also complains that, by permitting the search of "any" vehicles located on the premises, the warrant was overly broad. (*Id*. at 75.) The government insists that the warrant is not overly broad because the supporting affidavit established a sufficient nexus between the Jeep Cherokee and the drug trafficking activity under investigation. (Opp'n at 84.) The government also suggests that, in any event, the officers executed the search warrant in good faith. (*Id*.)

At their essence, Shephard's objections challenge the particularity of the warrant. The Fourth Amendment requires that a warrant describe with "particular[ity] . . . the place to be searched and the persons or things to be seized." *Md. v. Garrison*, 480 U.S. 79, 84, 107 S. Ct. 1013, 94 L. Ed. 2d 737 (1987) (quoting U.S. Const. amend IV). A warrant sufficiently particularizes the place to be searched if the executing officers "can, with reasonable effort, ascertain and identify the place intended." *Steele v. United States*, 267 U.S. 498, 503, 45 S. Ct. 414, 69 L. Ed. 757 (1925). Additionally, an affidavit or attachment to the warrant may cure an insufficiently particularized warrant. *See Mass. v. Sheppard*, 468 U.S. 981, 990 n.7, 104 S. Ct. 3424, 82 L. Ed. 2d 737 (1984) (dictum providing that an affidavit could have cured an overly broad warrant if the judge had deleted reference to the incomplete description in the warrant and attached the fully descriptive affidavit); *United States v. Richards*, 659 F.3d 527, 540–43 (6th Cir. 2011) (27–page affidavit cross referenced in search warrant cured any overbreadth in

warrant).

While Shephard suggests that the inclusion of "any" vehicle in the property to be searched renders the warrant insufficiently particularized, the Sixth Circuit and district courts therein have repeatedly held, albeit in unpublished cases, that when a warrant "specifically include[s] in its scope any vehicles present on the premises[,]" officers may search any vehicle, not just "vehicles belonging to the owner of the residence to be searched." *United States v. Thompson*, 91 F.3d 145 (Table), 1996 WL 428418, at *3 (6th Cir. July 30, 1996); *see United States v. Hendricks*, 888 F.2d 128 (Table), 1989 WL 125653, at *1 (6th Cir. Oct. 24, 1989) (noting that the search warrant permitted a search of all vehicles discovered on the premises); *see, e.g., United States v. Keeling*, No. 3:16-CR-00127-TBR, 2017 WL 2486353, at *7 (W.D. Ky. June 8, 2017) (denying suppression of evidence from vehicle search where warrant permitted the search of "any vehicle" on the premises). Dictum in reported Sixth Circuit decisions supports the sufficiency of such warrants. *See United States v. Smith*, 510 F.3d 641, 649 (6th Cir. 2007) (observing that "[h]ad the search warrant been executed a few hours earlier, the Pontiac would have easily fallen within the ambit of the warrant, which permitted the search of 1484 Albert and all vehicles on the premises"); *United States v. Smith*, 386 F.3d 753, 763 (6th Cir. 2004) (noting that the "search warrant specifically authorized a search of the detached garage and all vehicles on the premises").

Here, there is no dispute that the Jeep Cherokee was found in the bay of the Auto Spa, clearly falling within the "property to be searched[.]" Further, in addition to permitting the search of "any" vehicle on the premises, the warrant specifically cross-referenced TFO Lajack's affidavit, which detailed the role Shephard's black Jeep Cherokee played in the controlled drug

purchases. (*See* Search Warrant at 90.) Under these circumstances, the Court finds that the warrant was sufficiently particularized.[2] *See Richards*, 659 F.3d at 540–43; *see, e.g., Hendricks*, 1989 WL 125653, at *1 (noting that while the search warrant did not describe the corvette with particularity, "the affidavit of Officer McWright specifically identified the black corvette as having been used by the appellants to transport cocaine from Florida").

Even in the absence of a warrant, the search in question would be deemed constitutional under the automobile exception. This exception to the warrant requirement stems from both the inherent mobility of vehicles and the reduced expectation of privacy that results from their pervasive regulation. *See Pa v. Labron*, 518 U.S. 938, 940, 116 S. Ct. 2485, 135 L. Ed. 2d 1031 (1996); *Smith*, 510 F.3d at 647. "Under the automobile exception, police officers may conduct a warrantless search of a vehicle if they have 'probable cause to believe that the vehicle contains evidence of a crime.'" *Smith*, 510 F.3d at 647 (quoting *United States v. Lumpkin*, 159 F.3d 983, 986 (6th Cir. 1998)). There was more than sufficient information in the supporting affidavit— including evidence that the vehicle had been used by Shephard to transport drugs for the controlled buys—from which a reasonable officer would believe that evidence of drug trafficking would be found in Shephard's Jeep Cherokee. Accordingly, even if the warrant had not explicitly permitted the search of the vehicles at the Auto Spa, there was probable cause to

---

[2] Based upon the undisputed facts, Shepard's reliance on *United States v. Ybarra*, 444 U.S. 85, 100 S. Ct. 338, 62 L. Ed. 2d 238 (1979), is misplaced. There, a search warrant for a tavern did not permit the search of all persons found therein. Nevertheless, agents searched all the patrons, and found drugs on Ybarra. While the warrant permitted officers to search the tavern and the bartender, who was suspected of trafficking drugs, the Supreme Court ruled that it did not give the officers the right to search the patrons, including Ybarra, who were not suspected of illegal activity. *Ybarra*, 444 U.S. at 90-91. In contrast, the warrant here (along with the affidavit) generally permitted the search of any vehicle on the premises, and specifically supported the search of the Jeep Cherokee that was suspected of being utilized to transport drugs. Even setting aside the obvious difference in constitutional concerns between searches of vehicles and individuals, the Court finds Shephard's attempt to force the facts in this case into the scenario at play in *Ybarra* unpersuasive.

believe that evidence of drug trafficking would be found in Shephard's vehicle.

But even if the warrant did not satisfy the particularity requirement, and the automobile exception did not apply, the good faith exception, articulated in *United States v. Leon*, 468 U.S. 897, 104 S. Ct. 3405, 82 L. Ed. 2d 677 (1984), would still permit the drugs seized from the Jeep Cherokee to be admitted at trial. Under this exception, the exclusionary rule will not apply to bar the admission of evidence seized in violation of the Fourth Amendment where the officers had a "good-faith reliance on a search warrant that is subsequently held to be defective." *United States v. Weaver*, 99 F.3d 1372, 1380 (6th Cir. 1996) (quoting *Leon*, 468 U.S. at 905). The "good-faith inquiry is confined to the objectively ascertainable question whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization. In making this determination, all of the circumstances . . . may be considered." *Leon*, 468 U.S. at 922 n.23.

The good-faith defense will not apply, however, where: (1) the supporting affidavit contains information the affiant knew or should have known is false; (2) the issuing magistrate lacked neutrality and detachment; (3) the affidavit is devoid of information that would support a probable cause determination making any belief that probable cause exists completely unreasonable; or (4) the warrant is facially deficient. *Leon*, 468 U.S. at 923; *United States v. Helton*, 314 F.3d 812, 824 (6th Cir. 2003) (citations omitted).

Here, none of the exceptions to the good-faith rule in *Leon* apply. Shephard has not alleged that the supporting affidavit contains false information or that the affiant acted in bad faith, there is no evidence that the issuing magistrate abandoned his neutrality, the 28–page affidavit was not "bare bones," and the affidavit is not "so facially deficient–i.e., in failing to

particularize the place to be searched or the things to be seized—that the executing officers cannot reasonable presume it to be valid." *Leon*, 468 U.S. at 923. The officers executing the search warrant at the Auto Spa reasonably relied upon that warrant in searching Shephard's Jeep Cherokee. Accordingly, good faith supplies another alternative basis upon which to uphold the search.

III. **CONCLUSION**

For all of the foregoing reasons, Shephard's motion to suppress is DENIED.

**IT IS SO ORDERED**.


Dated: October 24, 2019

**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**